IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CODY SCHONES and LEO CALVILLO, | § | |
| On Behalf of Themselves and All Others | § | |
| Similarly Situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 5:16-cv-00483 |
| | § | |
| BIG T ENERGY SERVICES, LLC, and | § | FLSA COLLECTIVE ACTION |
| APACHE CORPORATION, | § | |
| | § | JURY TRIAL DEMANDED |
| Defendants. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, Cody Schones ("Schones") and Leo Calvillo ("Calvillo") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, file this Original Complaint against Big T Energy Services, LLC ("Big T") and Apache Corporation ("Apache") (collectively "Defendants"), showing in support as follows:

## I.    SUMMARY

1.      This is a civil action brought by Plaintiffs pursuant to the Federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the Federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA") for Defendants' failure to pay Plaintiffs all minimum wages owed in addition to failure to pay time all overtime wages owed.

2.      Plaintiffs file this FLSA cause of action individually and on behalf of all others similarly situated as a FLSA collective action pursuant to 29 U.S.C. § 216(b).

3.      Plaintiffs and the putative collective action members were labeled as independent contractors by Big T and/or Apache. However, under the FLSA's economic realities test, Plaintiffs and the putative collective action members were employees of Big T and/or Apache.

*Plaintiffs' Original Complaint – Page 1*

Furthermore, under the FLSA test for joint employers, Apache was a joint employer of Plaintiffs and the putative collective action members along with Big T, and the entities are therefore jointly and severally liable for the FLSA damages sought in this lawsuit.

4.      Plaintiffs and the putative collective action members worked as pumpers/lease hands on oilfield leases owned and/or operated by Apache (the "Apache Leases"). The Apache leases have numerous "batteries" in the Permian Basin. Each battery consists of several oilfield tank batteries and other oilfield production equipment. Each battery is connected to numerous oil and/or gas wells, typically approximately 10 to 15 oil and/or gas wells, relative to the Apache Leases. Pumpers/lease hands monitor the batteries for fluid flow and perform other work, in addition to making certain repairs to well sites and/or batteries as directed by Apache.

5.      For this work, Plaintiffs and the putative collective action members were initially paid by a company named Big T. Plaintiffs and the putative collective action members submitted invoices to Big T's post office box in Pyote, Texas for their work performed for Defendants. Big T then used that data to send invoices to Apache, and in return, Apache sent remuneration to Big T. After taking a percentage/portion of that remuneration, Big T was supposed to issue paychecks and 1099s to Plaintiffs and the putative collective action members for their work performed for Defendants relative to the Apache Leases.

6.      Plaintiffs and the putative collective action members were paid on a day rate basis. Although they regularly worked in excess of 40 hours per workweek, Plaintiffs and the putative collective action members were never paid overtime compensation by Big T or Apache during the time period relevant to this lawsuit.

7.      From approximately December 2015 to January 2016, Big T stopped paying Plaintiffs and the putative collective action members for the work performed on the Apache

Leases. Although Big T was, on information and belief, receiving remuneration from Apache for the work performed by Plaintiffs and the putative collective action members for Defendants, Big T did not provide any of that remuneration to Plaintiffs and the putative collective action members for work done during this period. Indeed, when pumpers/lease hands like Plaintiffs demanded payment, the checks issued to them by Big T bounced or they were not issued any paychecks at all (the "wage theft"). Checks which bounced for some individual pumpers/lease hands were as much as $17,000.  As is evident, Big T was a largely passive beneficiary of work done for Defendants relative to the Apache Leases by Plaintiffs and the putative collective action members. While Big T's primary role as an employer and/or joint employer was providing remuneration from Apache to Plaintiffs and putative collective action members, it failed to provide even that limited service.

8.      On information and belief, after learning that Plaintiffs and the putative collective action members had not been paid for their work on Apache Leases by Big T, Apache directed a porta-potty company to pay them for future work for a brief time period. Then, Apache arranged for another company named Crosby Energy Services ("Crosby") to pay Plaintiffs and the putative collective action members for their work for Apache. At this time, Crosby/Apache began paying Plaintiffs and the putative collective action members an hourly rate of pay, in addition to overtime pay when they worked in excess of 40 hours per week. As such, although still misclassified as independent contractors resulting in the failure of payment of payroll related taxes, Plaintiffs and the putative collective action members do not seek FLSA overtime or minimum wage damages in this lawsuit for work performed on Apache Leases after Plaintiffs and the putative class members began receiving payment for that work through Crosby.

9.      To date, not only have Plaintiffs and the putative collective action members not been paid the overtime and minimum wages owed under the FLSA by Defendants, Defendants have failed to remedy the wage theft. Although, on information and belief, Apache had operational control over its pumper/lease hands to shift which entities issued checks to those pumper/lease hands, *i.e.* the porta-potty company then Crosby, it failed to pay Plaintiffs and putative collective action members remuneration which Big T absconded with and for back pay pursuant to FLSA violations.

10.     Plaintiffs and the putative collective action members seek back wages, liquidated damages, legal fees, costs and all other available remedies as a result of Defendants' violations of the FLSA.

11.     Plaintiffs and the putative collective action members seek a three year limitations period based on Defendants' willful violations of the FLSA.

## II.      THE PARTIES, JURISDICTION AND VENUE

### A.      Plaintiff Cody Schones

12.     Schones is a natural person who resides Texas. He has standing to file this lawsuit.

13.     Relative to the claims in this lawsuit, Schones worked for Defendants in and around the Permian Basin, Texas exclusively on Apache Leases. The approximate time period for his exclusive work on Apache Leases was January 2015 to January 2016.

14.     Although Schones was labeled as a so-called independent contractor by Big T and/or Apache, the economic reality is that, at all times relevant, he was an "employee" of Big T and/or Apache as that term is defined by the FLSA. 29 U.S.C. § 203 (e)(1). *See also, Hopkins v.*

*Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). Alternatively, Big T and/or Apache were joint employers of Schones.

15.     For his work on the Apache Leases, Schones was paid a day rate of pay by Big T.

16.     Apache exercised operational control over Schones while working on the Apache Leases, including determining which third party should or would pay him for that work.

17.     Apache provided Schones with tools and equipment to perform his work on the Apache Leases, including color cuts and gauged needed to check the batteries.

18.     The day rate pay paid to Schones by Big T was provided to Big T by Apache based on days worked by Schones on Apache Leases. Pursuant to an agreement with Apache, Big T took a percentage of that day rate pay, then was supposed to issue the balance to Schones, in addition to 1099s each year.

19.     Schones was not paid for all time worked for Defendants, including overtime premium compensation for any hours worked over 40 in a week.

20.     Schones was not paid any wages for time periods when Big T refused to pay for his worked performed for Apache or otherwise issued him checks that bounced relative to the wage theft, although, on information and belief, Apache forwarded remuneration for that work to Big T.

### B.     Plaintiff Leo Calvillo

21.     Calvillo is a natural person who resides Texas. He has standing to file this lawsuit.

22.     Relative to the claims in this lawsuit, Calvillo worked for Defendants in and around the Permian Basin, Texas exclusively on Apache Leases. The approximate time period

for his exclusive work on Apache Leases was March 2015 to May 2015 and September 2015 to April 2016.

23.     Although Calvillo was labeled as a so-called independent contractor by Big T and/or Apache, the economic reality is that, at all times relevant, he was an "employee" of Big T and/or Apache as that term is defined by the FLSA. 29 U.S.C. § 203 (e)(1). *See also, Hopkins*, 545 F.3d at 343. Alternatively, Big T and/or Apache were joint employers of Calvillo.

24.     For his work on the Apache Leases, Calvillo was paid a day rate of pay by Big T.

25.     Apache exercised operational control over Calvillo while working on the Apache Leases, including determining which third party should or would pay him for that work.

26.     Apache provided Calvillo with tools and equipment to perform his work on the Apache Leases, including color cuts and gauged needed to check the batteries.

27.     The day rate pay paid to Calvillo by Big T was provided to Big T by Apache based on days worked by Calvillo on Apache Leases. Purusant to an agreement with Apache, Big T took a percentage of that day rate pay, then was supposed to issue the balance to Calvillo, in addition to 1099s each year.

28.     Calvillo was not paid for all time worked, including overtime premium compensation for any hours worked over 40 in a week.

29.     Calvillo was not paid any wages for time periods where Big T refused to pay for his worked performed for Apache or otherwise issued him checks that bounced relative to the wage theft, although, on information and belief, Apache forwarded remuneration for that work to Big T.

### C.     **Collective Action Members**

30.     The putative collective action members are all current and/or former pumpers/lease hands who, like Plaintiffs, worked on Apache Leases, were paid and/or supposed to be paid for that work for Apache through payments issued to Big T by Apache. Like Plaintiffs, the putative collective action members were, under the FLSA economic realities test, employees of Big T and/or Apache. Alternatively, Big T and/or Apache were joint employers of the putative collective action members for the claims made the subject matter of this lawsuit. Like Plaintiffs, the putative collective action members work/worked for Defendants in the Permian Basin on Apache Leases, under the operational control of Apache, were provided tools and equipment by Apache to perform their jobs on the Apache Leases, were paid on day rate basis, regularly worked in excess of 40 hours per seven day workweek, but were not paid time and one-half their respective regular rates of pay for all hours worked over 40 during each seven day workweek.

31.     Furthermore, the putative collective action members who, like Plaintiffs, worked for Defendants during the time period of approximately December 2015 to January 2016 were not paid all day rate pay for their work performed on the Apache Leases during that time period due to wage theft.

32.     The relevant time period for the claims of the putative collective action members is three years preceding the date this lawsuit was filed and forward.

33.     All of the putative collective action members are similarly situated to Plaintiffs, and to one another, within the meaning of Section 216(b) of the FLSA.

### D.     **Defendant Big T Services, LLC**

34.     On information and belief, Defendant Big T is a limited liability company organized under the laws of the State of Texas.

35.     During all times relevant to this lawsuit, Big T has done business in the State of Texas.

36.     While Defendant's alleged principal office and principal place of business according to the Texas Secretary of State is 3047 Bent Tree Ct., Bedford, Texas 76021, Plaintiffs never saw or worked at any premises owned or operated by Big T. In fact, they sent their invoices for the exclusive Apache work to the following P.O. Box for Big T – P.O. Box 348, Pyote, Texas 79777.

37.     During the time period relevant to the FLSA cause of action set forth in this lawsuit, Big T was an "employer" of Plaintiffs and the putative collective action members pursuant to the FLSA.

38.     Alternatively, during the time period relevant to the FLSA cause of action set forth in this lawsuit, Big T was a "joint employer" of Plaintiffs and the putative collective action members pursuant to the FLSA.

39.     At all times relevant to this lawsuit, Big T is or was an "enterprise engaged in commerce" as defined by the FLSA.

40.     At all times relevant to this lawsuit, Big T employed two or more employees who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

41.     At all times relevant to this lawsuit, Big T employed two or more employees who regularly handled and/or worked on goods and/or materials in their daily work that were moved in and/or produced for commerce by other people. Examples of such goods and/or materials include communications equipment, computers, and supplies/materials used in

connection with paying Plaintiffs and the putative collective action members for the work they performed for Apache.

42.     On information and belief, at times relevant to this lawsuit, Big T had annual gross sales or business volume in excess of $500,000.

43.     Since Big T's registered agent resigned on February 10, 2016, per Texas Secretary of State filings, Big T may be served with summons by serving the Texas Secretary of state as a matter of course at P.O. Box 12079, Austin, Texas 78711-2079.

### E.     **Defendant Apache Corporation**

44.     On information and belief, Defendant Apache is a corporation incorporated under the laws of the State of Texas.

45.     During all times relevant to this lawsuit, Apache has done business in the State of Texas. Furthermore, Apache employed Plaintiffs in Texas.

46.     Defendant's principal office and principal place of business is located at or near 2000 Post Oak Boulevard, Suite 1000, Houston, Texas 77056.

47.     During the time period relevant to the FLSA cause of action set forth in this lawsuit, Apache was an "employer" of Plaintiffs and the putative collective action members pursuant to the FLSA.

48.     Alternatively, during the time period relevant to the FLSA cause of action set forth in this lawsuit, Apache was a "joint employer" of Plaintiffs and the putative collective action members pursuant to the FLSA.

49.     At all times relevant to this lawsuit, Apache is and has been an "enterprise engaged in commerce" as defined by the FLSA.

50.    At all times relevant to this lawsuit, Apache employed, and continues to employ, two or more employees who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

51.    At all times relevant to this lawsuit, Apache employed two or more employees who regularly handled and/or worked on goods and/or materials in their daily work that were moved in and/or produced for commerce by other people. Examples of such goods and/or materials include tools, vehicles, lease equipment, pulling/workover/completion units, communications equipment, computers, and supplies/materials used in connection with drilling, completion and/or workover operations.

52.    On information and belief, at all times relevant to this lawsuit, Apache has had annual gross sales or business volume in excess of $500,000.

53.    Apache may be served with summons by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

**F.    <u>Jurisdiction and Venue</u>**

54.    The Court has personal jurisdiction over Defendants based on both general and specific jurisdiction.

55.    During all times relevant to this lawsuit, Defendants have done business in the State of Texas.

56.    The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiffs base their claims on federal law, namely 29 U.S.C. §§ 201, *et seq*.

57.    Venue is proper in the United States District Court for the Western District of Texas because one or more Defendants maintains business operations in this judicial district.

Furthermore, the Apache Leases referenced in this litigation are located within this judicial district as identified above, and material transactions and occurrences relevant to this lawsuit occurred in this judicial district.

58.     Venue is proper in the San Antonio Division of the United States District Court for the Western District of Texas because one or more Defendants maintains business operations in this Division. Furthermore, material transactions and occurrences relevant to this lawsuit occurred in this division.

### III.     FACTUAL BACKGROUND

59.     Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

60.     Plaintiffs worked as pumpers/lease hands on Apache Leases. The Apache Leases have numerous "batteries" in the Permian Basin. Each battery consists of several oilfield tank batteries and other oilfield production equipment. Each battery is connected to numerous oil and/or gas wells, typically approximately 10 to 15 oil and/or gas wells, relative to the Apache Leases. Pumpers/lease hands monitor the batteries for fluid flow and other work, in addition to making certain repairs to well sites and/or batteries as directed by Apache.

61.     For this work, Plaintiffs were initially paid by a company named Big T. Plaintiffs submitted invoices to Big T for their work for Apache. Big T then used that data to send invoices to Apache, and in return, Apache sent remuneration to Big T. After taking a percentage/portion of that remuneration, Big T was supposed to issue paychecks to Plaintiffs in addition to 1099s relative to their work performed for Defendants.

62.     Plaintiffs were paid on a day rate basis relative to their work on the Apache Leases.

63.     Although Plaintiffs regularly worked in excess of 40 hours per workweek, they were never paid overtime premium compensation at time and one-half their respective regular rates of pay for all hours worked over 40 in a workweek by Big T or Apache during the time period relevant to this lawsuit.

64.     In approximately December 2015 to January 2016, Big T stopped paying Plaintiffs for the work they performed on the Apache. Although Big T was, on information and belief, receiving remuneration from Apache for the work performed by Plaintiffs on the Apache Leases, Big T did not provide any of that remuneration to Plaintiffs, constituting wage theft. When pumpers/lease hands like Plaintiffs demanded payment, the checks issued them by Big T bounced or they were not issued any paychecks at all. Such failure to pay for work performed is wage theft. Checks which bounced for some individual pumpers/lease hands were as much as $17,000.

65.     Big T and Apache worked together in an effort to avoid the requirements of the FLSA and Texas Workers Compensation regulations by creating the illusion that Plaintiffs and putative collective action members were independent contractors retained by Big T. However, Big T was nothing more than the type of "fly-by-night" contractor from which the FLSA seeks to protect reputable employers and employees. For example, Plaintiffs did not work on any Big T location, but simply sent invoices for their exclusive work for Apache to a P.O. Box for Big T in Pyote, Texas. Big T used that date to invoice Apache, and Apache sent remuneration to Big T for Plaintiffs' work. Big T then passively benefited from this illusory relationship by taking a percentage of that pay, and issuing 1099s to Plaintiffs. In so doing, Defendants attempted to make it appear, on paper at least, that Plaintiffs were not employees.

66.     In addition to dodging the payment of overtime premiums with this practice and policy of mislabeling Plaintiffs as independent contractors or workers for another company, Apache also dodged payment of FICA taxes to the government, and state unemployment taxes and workers' compensation taxes/payments.

67.     On information and belief, after learning that pumpers/lease hands like Plaintiffs had not been paid for their work on Apache Leases by Big T, Apache directed a porta-potty company to pay Plaintiffs and putative collective action members for a brief time period. Then, Apache arranged for another company named Crosby to pay pumpers/lease hands like Plaintiffs for their work for Apache. Around that same time period, Crosby began paying pumpers/lease hands like Plaintiffs an hourly rate of pay, in addition to overtime pay when they worked in excess of 40 hours per week. As such, although still misclassified as independent contractors, Plaintiffs and/or the putative collective action members do not seek FLSA overtime or minimum wage damages in this lawsuit for time periods in which Crosby served as the third party payment company for Apache.

68.     To date, not only have Plaintiffs not been paid the overtime and minimum wages owed under the FLSA by Defendants, Defendants have failed to remedy the failure to pay any wages and damages relative to the wage theft.

69.     Defendants labeled Plaintiffs as a so-called "independent contractors." However, the economic reality is that Plaintiffs were Big T's and/or Apache's employees during the time periods relevant to the claims in this lawsuit.

70.     Apache controlled the manner in which Plaintiffs performed their work relative to the Apache Leases. For example, Plaintiffs answered to Apache daily for instructions on battery reports, actions to be taken relative to Apache batteries and other work on Apache

batteries by Apache employees. In fact, Apache had a group of pumpers/lease hands who typically worked different shifts than Plaintiffs who were, on information and belief, labeled and paid as W-2 employees of Apache. Essentially, Plaintiffs worked directly for Apache, but Big T was supposed to pay them for the work they performed for Apache after taking a cut of Plaintiffs' pay. Plaintiffs were not permitted to hire employees, and did not hire employees, to assist them with their work on the Apache Leases. Apache's control over Plaintiffs' work is further demonstrated by Apache directing a porta-potty company, then Crosby, to issue paychecks to pumpers/lease hands like Plaintiffs for work they performed on Apache Leases after the wage theft in December 2015 to January 2016 by Big T and/or Apache.

71.     Plaintiffs provided no material investment in Defendants' respective business operations. All financing, work materials, tools, plans, oilfield equipment, work vehicles, administrative support, and all other material items related to Apache's Leases were provided by Apache. Big T maintained a post office Box in Pyote, Texas where Plaintiffs mailed invoices relative to their exclusive work for Apache. With the exception of the wage theft, Big T processed checks and 1099s for Plaintiffs. Additionally, Apache provided Plaintiffs with tools and equipment, such as color cuts and gauges, to perform their work on the Apache Leases. Defendants' respective investments in the business operations were significantly greater than each Plaintiff's and putative collective action member's investments in the Apache Lease work.

72.     Plaintiffs' opportunity for profit or loss was determined by Defendants. Plaintiffs' work for the Defendants was their sole source of earned income over many consecutive months in the time period relevant to this lawsuit. Furthermore, the long hours worked by Plaintiffs on the Apache Leases prevented any meaningful opportunity for earned income outside of work for Defendants.

73.     Defendants, predominantly Apache, provided and controlled all project assignments and work instructions to Plaintiffs. Plaintiffs did not engage in activities to market business operations for potential customers as would be expected of a bona fide independent contractor. Apache even determined who issued paychecks and 1099s to Plaintiffs relative to their work for Apache on the Apache Leases. Plaintiffs did not submit bids to obtain work from other businesses, but instead simply worked on Apache Leases as determined by Apache and/or Big T. In doing their jobs for Defendants, Plaintiffs did not shop the market for cheaper supplies or higher paying contracts in order to boost profit margins. Plaintiffs were simply paid a day rate for their work on the Apache Leases. Plaintiffs did not and could not hire employees of their own while working on Apache Leases. Similarly, Plaintiffs did not and were not permitted to subcontract the work assigned them relative to the Apache Leases. Furthermore, Plaintiffs had no opportunity for loss. Instead, there was only opportunity for earned income based upon the amount of time worked on/in connection with Apache Leases.

74.     Plaintiffs' work as pumpers/lease hands was manual in nature and did not require a unique skill set. Instead, it involved basic knowledge of oilfield operations relative to batteries in addition to understanding how Apache performed its business operations relative to those Apache Leases.

75.     The permanency of the relationship between Plaintiffs and Defendants was significant. Pumpers/lease hands like Plaintiffs typically worked for Apache on the Apache Leases for a year or more.

76.     The services provided by Plaintiffs were integral parts of Defendants' business operations.

77.     Defendants performed all marketing, administrative, and IT support for business operations involving Plaintiffs.

78.     As a non-exempt employees of Defendants, Plaintiffs were entitled to overtime compensation for each and every hour worked over 40 in a workweek.

79.     Plaintiffs regularly worked in excess of 40 hours per workweek.

80.     Defendants did not pay Plaintiffs time and one-half their respective regular rates of pay for all hours worked over 40 in each and every workweek during the time period relevant to this lawsuit.

81.     During their employment with Defendants, Plaintiffs worked with numerous other employees of Defendants who were similarly situated to Plaintiffs with respect to job duties, rates of pay, and the work experiences identified by Plaintiffs above. Those other employees worked as pumpers/lease hands on Apache Leases, were misclassified as independent contractors as opposed to employees under the FLSA, were paid on a day rate basis through Big T for work performed on Apache Leases, generally worked in excess of 40 hours in a workweek without being paid all corresponding FLSA mandated overtime premium compensation, and also were not paid all FLSA mandated minimum wages due to the wage theft.

## IV.     CONTROLLING LEGAL RULES

82.     Whether an individual is an employee, who is covered by the FLSA's provisions, as opposed to an independent contractor, who is not covered by the FLSA, is determined by the economic realities test. *Hopkins,* 545 F.3d at 343. The purpose of the economic realities test is to determine whether "the worker is economically dependent upon the alleged employer or is instead in business for himself." *Id.*

83.     District Courts within the Fifth Circuit consider the following five factors in assessing the economic reality of the working relationship: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Id.* at 343 (*citing Herman v. Express Sixty-Minutes Delivery Serv., Inc.,* 161 F.3d 299, 303 (5th Cir. 1998). The Fifth Circuit further noted that: "[n]o single factor is determinative. Rather, each factor is a tool used to gauge the *economic dependence* of the alleged employee, and each must be applied with this ultimate concept in mind." *Id.* (*citing Herman*, 161 F.3d at 303 and *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1043-44 (5th Cir. 1987)).

84.     The FLSA recognizes the doctrine of joint employers. "Where an employee performs work that simultaneously benefits more than one employer, the concept of 'joint employment' imposes individual and joint FLSA liability on all employers." *Parker v. ABC Debt Relief, Ltd. Co.*, Civil Action No. 3:10-cv-1332-P, 2013 U.S. Dist. LEXIS 12859, at *13 - 20 (N.D. Tex. Jan. 28, 2013) (Solis, J.) (citing *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669-70 (5th Cir. 1968).

85.     The FLSA generally requires that an employer employing an employee for a workweek exceeding 40 hours must compensate the employee for hours worked over 40 "at a rate not less than one and one-half times the regular rate of pay." 29 U.S.C. § 207(a)(1). The "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e).

86.     The FLSA requires that employees be paid no less than $7.25 per hour relative to all hours worked. 29 U.S.C. § 206(a)(1)(C).

87.     Plaintiffs were not "exempt" from the FLSA's overtime and/or minimum wage provisions. 29 U.S.C. § 213.

88.     "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

89.     Failing to pay the required overtime premium for hours worked over 40 in a workweek and/or the required minimum wage rate are violations of the FLSA. 29 U.S.C. § 216.

90.     The FLSA provides for a two year statute of limitations which may be extended to three years where the cause of action arises out of a "willful" violation. 29 U.S.C. § 255(a).

## V.     FLSA CLAIMS

91.     Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

92.     This action is authorized and instituted pursuant to the FLSA. 29 U.S.C. §§ 201, *et seq*.

93.     All conditions precedent to this suit, if any, have been fulfilled.

94.     At all material times, Plaintiffs were employees and/or joint employees of Defendants pursuant to the FLSA. 29 U.S.C. § 203(e); *Wirtz*, 405 F.2d at 669-70. Although Big T and/or Apache labeled Plaintiffs as a so-called independent contractors, the economic reality is that Plaintiffs were employees of Big T and/or Apache.

95.     At all material times, Defendants are and were eligible and covered employers pursuant to the FLSA. 29 U.S.C. § 203(d).

96.     Plaintiffs routinely worked in excess of 40 hours per seven-day workweek for Big T and/or Apache  in the time period relevant to this lawsuit.

97.     At all material times, Plaintiffs was entitled to overtime compensation from Big T and/or Apache at one and one-half times their respective regular rates of pay. 29 U.S.C. § 207(a)(1).

98.     Big T and/or Apache failed to pay Plaintiffs overtime compensation at one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit.

99.     At all material times, Plaintiffs was entitled to the required minimum wage compensation mandated by the FLSA from Big T and/or Apache. 29 U.S.C. § 206(a)(1)(C).

100.    Big T and/or Apache failed to pay Plaintiffs all minimum wages owed as a result of the wage theft.

101.    Defendants' violations of the FLSA are and were willful within the meaning of 29 U.S.C. § 255(a). *See Singer v. City of Waco*, 324 F.3d 813, 821-22 (5th Cir. 2003) (upholding a jury finding of willfulness). Plaintiffs specifically plead recovery for the time period of three years preceding the date this lawsuit was filed and forward for their FLSA claims.

102.    Plaintiffs seeks all damages available for Big T's and/or Apache's violations of the FLSA.

## VI.     FLSA COLLECTIVE ACTION

103.    Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

104.    The putative collective action members are all current and/or former pumpers/lease hands who, like Plaintiffs, worked on Apache Leases in the Permian Basin, were paid and/or were supposed to be paid for that work for Apache through payment issued to Big T by Apache. Like Plaintiffs, the putative collective action members were, under the FLSA

economic realities test, employees of Big T and/or Apache. Alternatively, Big T and/or Apache were joint employers of the putative collective action members for the claims made the subject matter of this lawsuit. Like Plaintiffs, the putative collective action members work/worked for Defendants in the Permian Basin on Apache Leases, under the operational control of Apache, were provided tools and equipment by Apache to perform their jobs on the Apache Leases, were paid on day rate basis, regularly worked in excess of 40 hours per seven day workweek, but were not paid time and one-half their regular rates of pay for all hours worked over 40 during each seven day workweek.

105.    Furthermore, the putative collective action members who, like Plaintiffs, worked for Defendants during the time period of approximately December 2015 to January 2016 were not paid all day rate pay for their work performed on the Apache Leases during that time period due to wage theft which results in a violation of the FLSA's minimum wage law..

106.    Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis. *See Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (certifying nationwide collective action in FLSA case); *see also*, *Jones v. SuperMedia Inc.,* 281 F.R.D. 282, 290 (N.D. Tex. 2012) (same).

107.    All of the putative collective action members are similarly situated to Plaintiffs, and to one another, within the meaning of Section 216(b) of the FLSA.

108.    Plaintiffs reserve the right to establish sub-classes and/or modify class notice language as appropriate in any collective action certification motion or other proceeding.

109.    Plaintiffs further reserve the right to amend the definition of the putative class, or sub classes therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

## VII.    JURY DEMAND

110.    Plaintiffs demand a jury trial.

## VIII.    DAMAGES AND PRAYER

111.    Plaintiffs asks that the Court issue a summons for Defendants to appear and answer, and that Plaintiffs be awarded a judgment against Defendants for the following:

a.      Actual damages in the amount of unpaid overtime wages;

b.      Actual damages in the amount of unpaid minimum wages;

b.      Liquidated damages;

c.      Post-judgment interest;

d.      Costs;

e.      Reasonable attorney's/attorneys' fees; and

f.      All other relief to which Plaintiffs and the putative collective action members are entitled.

Respectfully submitted,

By:      s/ Allen Vaught_____
Allen R. Vaught
TX Bar No. 24004966
MS Bar No. 101695
avaught@baronbudd.com
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas  75219
(214) 521-3605 – Telephone
(214) 520-1181 – Facsimile

/s/ Glenn D. Levy
Glenn D. Levy
Texas Bar No. 12264925
Law Office of Glenn D. Levy
906 Basse Road, Suite 100
San Antonio, Texas 78212
Telephone: (210) 822-5666
Facsimile: (210) 822-5650
glenn@glennlevylaw.com

ATTORNEYS FOR PLAINTIFFS